**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**Tracy DANIELS, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 22, 2010.
Filed June 18, 2010.

Tracy J.J. Daniels, appellant, Pro Se.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: SHOGAN, POPOVICH and CLELAND *, JJ.

OPINION BY SHOGAN, J.:

¶ 1 Appellant, Tracy Daniels, appeals from the judgment of sentence entered on June 5, 2008 in the Philadelphia County Court of Common Pleas. Appellant's counsel has filed a petition to withdraw pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *Commonwealth v. McClendon,* 495 Pa. 467, 434 A.2d 1185 (1981). For the reasons that follow, we affirm the judgment of sentence and grant counsel's petition to withdraw.

¶ 2 The trial court aptly set forth the facts of this case as follows:

On February 28, 2007, at approximately 4:40 p.m., Police Officers Lai and Bucceroni were in full uniform in [a] marked patrol car traveling southbound on Point Breeze at the intersection of Reed Street. (N.T. 1/22/08, pp. 4–5). Lai, who had previously witnessed numerous narcotics transactions in this area, observed Appellant sitting in the driver's

* Retired Senior Judge assigned to the Superior Court.

seat of a grey Cadillac, parked approximately thirty feet from the intersection at the southeast corner of the 2100 block of Reed Street. (N.T. 1/22/08, pp. 5–9). A male later identified as Eric Jones [("Mr. Jones")] approached Appellant and handed him what appeared to be United States currency, and in return Appellant handed Jones a small object, which he tore into. (N.T. 1/22/08, p. 5). The officers then turned left, heading eastbound on Reed Street and approached Appellant's vehicle. (N.T. 1/22/08, p. 24). Lai stopped [Mr.] Jones as he walked away from Appellant's vehicle and retrieved one blue glassine packet of suspected heroin from him. (N.T. 1/22/08, pp. 5–6). Bucceroni approached Appellant, requested a driver's license, insurance and registration, and then observed a blue glassine packet of white powdery substance stamped "100%" in plain view on the seat between Appellant's knees; the officer recognized this item as heroin. (N.T. 1/22/08, pp. 25–26). Appellant was then removed from his vehicle and placed in handcuffs. (N.T. 1/22/08, pp. 27–28). A search of Appellant produced five heat-sealed packets of heroin, $374, a small blue heat-sealed packet containing marijuana, and a tan envelope containing marijuana. (N.T. 1/22/08, pp. 27–28).

Trial Court Opinion, 9/3/09, at 1–2 (citations to the notes of testimony in original).

¶ 3 Appellant filed a motion to suppress, which was denied, and the case proceeded to a bench trial. At the conclusion of the bench trial, Appellant was found guilty of possession with intent to deliver a controlled substance ("PWID"), and one count of possessing a controlled substance. On June 5, 2008, the trial court sentenced Appellant to a term of 27 to 60 months of incarceration, and Appellant timely appealed.

■ ¶ 4 As noted above, Appellant's counsel filed a petition to withdraw under *Anders.* When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw. *Commonwealth v. Goodwin,* 928 A.2d 287, 290 (Pa.Super.2007) *(en banc)* (citation omitted).

■ ¶ 5 In order for counsel to withdraw from an appeal pursuant to *Anders,* certain requirements must be met, and counsel must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago,* 602 Pa. 159, 178–179, 978 A.2d 349, 361 (2009).

■ ¶ 6 We note that the holding in *Santiago* altered prior requirements for withdrawal under *Anders. Santiago* now requires counsel to provide the reasons for concluding the appeal is frivolous. The Supreme Court explained that the requirements set forth in *Santiago* would apply only to cases where the briefing notice was issued after the date that the opinion in *Santiago* was filed, which was August 25, 2009. Here, the briefing notice that was sent to the parties was dated September 11, 2009, requiring Appellant's brief to be filed on or before October 21, 2009, pursuant to Pennsylvania Rule of Appellate Procedure 2185. As the briefing notice in the

case at bar followed the filing of *Santiago*, its requirements are applicable here.

■ ¶ 7 Our review of counsel's application to withdraw, supporting documentation, and *Anders* brief reveals that counsel has complied with all of the foregoing requirements. *Anders* Brief at XXI–XXIV. We note that counsel also furnished a copy of the brief to Appellant, advised him of his right to retain new counsel, proceed *pro se* or raise any additional points that he deems worthy of the court's attention, and attached to the *Anders* petition a copy of the letter sent to the client as required under *Commonwealth v. Millisock*, 873 A.2d 748, 751 (Pa.Super.2005). While the Supreme Court in *Santiago* set forth the new requirements for an *Anders* brief, which are quoted above, the holding did not abrogate the notice requirements set forth in *Millisock* that remain binding legal precedent.[1] As counsel has complied with all of the requirements set forth above, we now turn to the issues counsel stated arguably support an appeal.

¶ 8 In the *Anders* brief, counsel presents three issues for this Court's review:

A. Was the evidence sufficient enough to convict [Appellant] of Possession With the Intent to Deliver and Possession of a Controlled Substance?

B. Was Trial Counsel for [Appellant] Ineffective thus depriving [Appellant] of his Constitutional Right to Testify?

C. Did the Lower Court err in denying the Motion to Suppress the physical evidence in the form of narcotics recovered?

*Anders* Brief at VI. We will address these issues in the order in which they were presented.

¶ 9 First, counsel raises a claim that the evidence was insufficient to sustain Appellant's convictions for possession of a controlled substance and PWID.[2] The standard of review for a challenge to the sufficiency of the evidence is as follows:

In determining whether the evidence was sufficient to support a defendant's conviction, we must review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. If we find, based on that review, that the jury could have found every element of the crime beyond a reasonable doubt, we must sustain the defendant's conviction.

*Commonwealth v. Murphy*, 577 Pa. 275, 284, 844 A.2d 1228, 1233 (2004) (citations omitted). The illegal acts of possession of a controlled substance and PWID are set forth as follows:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

\* \* \*

(16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not

---

1. We are cognizant of the proposed amendment to Pennsylvania Rule of Appellate Procedure 120. The proposal combines the Supreme Court's mandate in *Santiago*, regarding the contents of the brief, and the notice requirements set forth in *Millisock*. The proposed version of Rule 120 would combine the aforementioned briefing and notice requirements and add a timing component.

2. In the *Anders* brief, counsel explains that the suspected contraband was in plain sight, the arrest led to the discovery of additional contraband matching that found in the possession of Mr. Jones, and the contraband was subsequently tested and revealed to be a controlled substance.

registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

* * *

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780–113(a)(16) and (30).

¶ 10 Here, the evidence reveals that Appellant was arrested while in possession of heroin. Heroin is classified as a Schedule I narcotic and controlled substance. 35 P.S. § 780–104(1)(ii)(10). Accordingly, when viewed in the light most favorable to the Commonwealth, the evidence was sufficient to establish that Appellant possessed a controlled substance beyond a reasonable doubt.

¶ 11 In regard to PWID, it is well settled that intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case. *Commonwealth v. Griffin*, 804 A.2d 1, 15 (Pa.Super.2002). Factors that may be relevant in establishing that the drugs were possessed with the intent to deliver include the packaging, the form of the drug, and the behavior of the defendant. *Id.*

¶ 12 As noted above, Officer Lai witnessed Mr. Jones approach Appellant while Appellant was sitting in a parked car. The officer witnessed a hand-to-hand exchange of money for small objects. Mr. Jones was stopped and discovered to be in possession of a blue-tinted packet of her-

oin. When Appellant was arrested he was found to be in possession of five blue heat-sealed packets of heroin, and $374 in cash. The amount of heroin possessed, its packaging, the cash possessed by Appellant, the fact that Officer Lai witnessed Mr. Jones engage in a hand-to-hand transaction with Appellant, and that upon his arrest, Mr. Jones was found in possession of one of the same packets of heroin that Appellant possessed establish that the evidence was sufficient to sustain Appellant's conviction of PWID. Accordingly, a challenge to the sufficiency of the evidence is wholly frivolous.

¶ 13 Next, counsel raises a claim that Appellant's trial counsel was ineffective. As a general rule, claims of ineffective assistance of trial counsel should be presented in a collateral proceeding. *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002). However, the Supreme Court of Pennsylvania established an exception to the rule it announced in *Grant*. In *Commonwealth v. Bomar*, 573 Pa. 426, 466, 826 A.2d 831, 845 (2003), the Supreme Court held that claims of ineffectiveness may be heard on direct appeal, where the claims were raised before the trial court, and a record was developed. *Bomar*, 573 Pa. at 466, 826 A.2d at 845.

¶ 14 Here, the record reflects that the trial court held a hearing on Appellant's post-sentence motion that addressed this issue. N.T. Hearing, 11/10/08 and 11/12/08. Accordingly, as the issue was raised and a record was developed before the trial court, we will address the allegation of trial counsel's ineffectiveness pursuant to *Bomar*.

¶ 15 In the *Anders* brief, counsel asserts that trial counsel was ineffective inasmuch as he deprived Appellant of his right to testify on his own behalf or did not ade-

quately advise Appellant of this right. *Anders* Brief at XVIII. It is well settled that appellate courts presume that trial counsel was effective. *Commonwealth v. Montalvo*, 604 Pa. 386, 416, 986 A.2d 84, 102 (2009) (citation omitted). To rebut this presumption, the appellant must demonstrate that: 1) the underlying claim is of arguable merit; 2) counsel had no reasonable strategic basis for his or her action or inaction; and 3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Id.* (citation omitted). Moreover, the appellant/petitioner bears the burden of proving all three prongs of the test. *Id.* (citation omitted).

■ ¶ 16 "The decision whether to testify is ultimately to be made by the accused after consultation with counsel." *Commonwealth v. Whitney*, 550 Pa. 618, 630, 708 A.2d 471, 476 (1998) (citation omitted). "Counsel is not ineffective where counsel's decision to not call defendant was reasonable, *e.g.*, where defendant could be impeached with his prior record of offenses *crimen falsi*." *Id.* (citation omitted).

¶ 17 Here, the record reflects that, at the post-sentence hearing, trial counsel testified that he advised Appellant of his right to testify but explained that the Commonwealth would then seek to admit evidence of Appellant's prior *crimen falsi*. N.T., 11/10/08, at 15. Trial counsel informed Appellant of the ramifications of him opting to testify, but that ultimately it was Appellant's decision. *Id.* at 15–17. Moreover, there is no indication or inference that, had Appellant testified, the outcome would have been different and, therefore, there was no prejudice.

¶ 18 Upon review, we conclude that this issue is frivolous. Trial counsel apprised Appellant of his right to testify, explained the pitfalls associated with exercising that right, and ultimately left the decision up to Appellant. As counsel clearly had a strategic basis for the aforementioned advice, we discern no ineffective assistance of counsel.

■ ¶ 19 Finally, counsel raises a claim that the suppression court erred in denying Appellant's motion to suppress. Specifically, it is alleged in the *Anders* brief that the stop of Appellant was not supported by probable cause or reasonable suspicion. Anders Brief at XIX.

¶ 20 The standard of review we apply in an appeal from the denial of a motion to suppress is set forth below:

We determine whether the court's factual findings are supported by the record and whether the legal conclusions drawn from them are correct. Where, as here, it is the defendant who is appealing the ruling of the suppression court, we consider only the evidence of the prosecution and so much of the evidence for the defense which remains uncontradicted when fairly read in the context of the whole record. If, upon our review, we conclude that the record supports the factual findings of the suppression court, we are bound by those facts, and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Crork*, 966 A.2d 585, 586–587 (Pa.Super.2009) (citation omitted).

■ ¶ 21 It is well settled that there are three distinct levels of interaction between law enforcement and the general public. The first level is the mere encounter, which need not be supported by any level of suspicion, but it carries no official compulsion to stop or respond. *Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa.Super.2006), *appeal denied*, 594 Pa. 685, 934 A.2d 71 (2007). The second level is the investigative detention, which must

be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but it does not involve such coercive conditions as to constitute the functional equivalent of arrest. *Id.* Finally, the third level is an arrest or custodial detention, which must be supported by probable cause. *Id.*

¶ 22 This Court has previously described the requirements for an investigative detention as follows:

Prior to subjecting a citizen to an investigatory detention, the police must harbor at least a reasonable suspicion that the person seized is then engaged in unlawful activity. The question of whether reasonable suspicion existed at the time of an investigatory detention must be answered by examining the totality of the circumstances to determine whether there was a particularized and objective basis for suspecting the individual stopped of criminal activity. Thus, to establish grounds for reasonable suspicion, the officer whose impressions formed the basis for the stop must articulate specific facts which, in conjunction with reasonable inferences derived from those facts, led him reasonably to conclude, in light of his experience, that criminal activity, was afoot.

*Commonwealth v. Cottman,* 764 A.2d 595, 598–599 (Pa.Super.2000) (quoting *Commonwealth v. Beasley,* 761 A.2d 621, 625 (Pa.Super.2000), *appeal denied,* 565 Pa. 662, 775 A.2d 801 (2001)). It is well established that a stop of a motor vehicle by the police constitutes an investigative detention. *Commonwealth v. Campbell,* 862 A.2d 659, 663 (Pa.Super.2004), *appeal denied,* 584 Pa. 699, 882 A.2d 1004 (2005).

¶ 23 Here, the trial court found that Officer Lai witnessed Mr. Jones walk up to Appellant's car, reach through the window, and hand Appellant what appeared to be United States currency in exchange for a small item. Trial Court Opinion, 9/3/09, at 1–2. After Mr. Jones procured the item, he began ripping it open. *Id.* at 2. Officer Lai testified that he knew this to be a high drug trafficking area. *Id.* at 1. The officer believed he had witnessed a drug transaction and investigated further. *Id.* at 3. Thus, because the trial court's determination is supported by the record, we discern no error in the trial court's conclusion that the officers articulated specific facts which, in conjunction with reasonable the inferences derived therefrom, led them to conclude that criminal activity was afoot.[3] *Cottman, supra.*

**3.** As noted here, we conclude that the officers had reasonable suspicion that criminal activity was afoot but that, at this juncture, it had not yet developed into probable cause. The trial court thoroughly, and we conclude correctly, explained its rationale as follows:

The Court is aware that, contrary to the dictates of the Pennsylvania Supreme Court in *Commonwealth v. Dunlap,* 596 Pa. 147, 941 A.2d 671 (2007), Officer Lai did not relate how his experience and training helped him form the belief that he had witnessed a narcotics transaction. It is for this reason that probable cause may not have been established based solely on Lai's testimony. However, even without further delineation as to why Lai thought what he thought, the facts on their face would

arouse the suspicions of any reasonable person. Quick, hand-to-hand transactions of money for small items through a car window in a crime-friendly stretch of Philadelphia are, in the absence of noticeably larger items such as soft pretzels, pies, roses, beverages or newspapers, commonly known to often involve narcotics. The item or items passed here were so small that Lai couldn't even see them as they passed from hand to hand. The fact that the suspected buyer proceeded to rip open what he had received would only further fuel one's suspicions.

Trial Court Opinion, 9/3/09, at 3 n. 1. *See also Commonwealth v. Thompson,* 604 Pa. 198, 985 A.2d 928 (2009) (discussing and disapproving of *Dunlap, supra,* and explaining that a police officer's experience may be fairly

¶ 24 Moreover, in this case, reasonable suspicion ripened into probable cause to arrest when Officer Bucceroni saw the heat-sealed packet of heroin on Appellant's lap in plain sight. *See Commonwealth v. White,* 358 Pa.Super. 120, 516 A.2d 1211, 1215 (1986) ("An investigative detention may properly ripen into an arrest based on probable cause when additional information confirming the earlier suspicions is uncovered."). Accordingly, we conclude that the motion to suppress was properly denied, counsel's assessment of this issue was correct, and that Appellant is entitled to no relief on this claim.

¶ 25 For the reasons discussed in the foregoing and following our independent review of the record, we conclude that Appellant's appeal is wholly frivolous, and we affirm the judgment of sentence. Moreover, as we agree with counsel's assessment of the appeal, and because we conclude that counsel has satisfied the requirements for withdrawal on direct appeal, we grant counsel's petition to withdraw.

¶ 26 Judgment of sentence affirmed. Petition to withdraw granted. Jurisdiction relinquished.

regarded as a relevant factor in determining probable cause Nevertheless, as we mention below, reasonable suspicion ripened into probable cause).