J-A28034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARQUIS RAMEY, | |
| Appellant | No. 3513 EDA 2014 |

Appeal from the Judgment of Sentence November 12, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001422-2013

BEFORE:  GANTMAN, P.J., PANELLA, and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 13, 2016**

Appellant, Marquis Ramey, appeals from the November 12, 2014 judgment of sentence of an aggregate term of incarceration of nine to twenty years imposed after he was found guilty of loitering and prowling at night time, possession of instruments of crime, receiving stolen property, possession of a firearm, carrying a firearm without a license, and criminal conspiracy.  Appellant alleges specifically that the trial court erred when it denied his pre-trial suppression motion.  After careful review, we affirm.

The trial court summarized the relevant factual and procedural background of this case as follows:

> At 4:00 a.m. on October 17, 2012, Darby Borough Police Officer [Paul] McGrenera responded to a radio call of a burglary at 538 Pine Street in Darby.  The radio dispatch advised that a blue Buick with tinted windows was possibly involved.  When Officer McGrenera arrived at 538 Pine Street, Mary Ann Bender,

a female from several doors away (524 Pine) told him that she saw a blue Buick with tinted windows driving east on Pine Street and turn left onto Fifth Street. The resident of 538 Pine Street, Oliver Sallie, told Officer McGrenera that he was lying on his living room couch when he heard loud banging from the back door. He went towards the noise and saw a black male in a dark hooded sweatshirt on the porch attempting to kick in the back door. Moments later, he saw a blue Buick with a gray panel bottom driving away. The bottom panel on the passenger side was missing from the vehicle. There were footprints on the rear door and fresh damage to the wood frame molding around the door.

Darby Officer [John] Dupiriak, driving a different police vehicle, also responded to a radio call of a burglary in progress involving a blue Buick with a gray side panel. He was about 10 blocks away from 538 Pine Street when he received the call, and he drove toward the scene with his lights activated but no sirens. The dispatcher advised that the actor was a black male wearing a dark hoody, and that the suspect vehicle was a blue Buick with a gray panel on the side. As Officer Dupiriak turned onto Moore Street, about three blocks away from 538 Pine Street, he observed a black male [Appellant] wearing a dark colored sweatshirt walking towards him. The male turned around and started to run. The officer exited his vehicle and ordered the male to stop.

Corporal [Joseph Trigg], who had also arrived on the scene, surrounded the male with guns drawn. The male was forced to the ground and handcuffed. Officer Dupiriak patted the male down. He removed a bag that was in plain view in the male's waistband as well as a blue latex glove from his front right jean pocket and a clear latex glove from his front left jean pocket. The bag was a large plastic trash bag three feet long, but nothing illegal was inside the bag. There was a clear latex glove on the ground. Officer Dupiriak and Corporal [Trigg] asked the male what he was doing in the area, and the male answered that he was coming from Philadelphia off of the trolley. The Officers believed this to be an odd story because the trolley stopped running two hours earlier. The male said he was in the area trying to go to his girlfriend's house to retrieve some items. He could not identify the girlfriend's address or her street. He said that he was doing work with the gloves earlier in the day and had the trash bag to retrieve some items from his

- 2 -

girlfriend's house.  He was not sure what location in Philadelphia he was coming from.

Officer Dupiriak arrested [Appellant] for loitering, took him to police headquarters, and returned to the scene to do more investigating.  While Officer Dupiriak was intercepting and arresting [Appellant], Officer McGrenera talked with Sallie for about a half hour, and then left Sallie's house in his vehicle.

About one to two blocks away from Sallie's house, Officer McGrenera saw a Buick matching the description of the car that Sallie saw.  The car was blue with gray panels missing on the side and had tinted windows, just as Sallie had described.  Officer Dupiriak, who had returned after leaving [Appellant] at the police station, arrived at this location at the same time as Officer McGrenera.  Officer Dupiriak observed Officer McGrenera call Delcom dispatch and state that he found a vehicle matching the description of the Buick that had possibly been involved in the burglary attempt.

A male, [Appellant's co-defendant], was sitting in the front passenger seat of the Buick, hunched over trying to hide while moving around.  Officers McGrenera and Dupiriak approached the car from the rear with guns drawn, and Officer McGrenera ordered the male to exit the vehicle.  The male did not comply.  Officer McGrenera smashed the driver side windows to look inside the vehicle because it was heavily tinted, and the male exited on the passenger side.  Officer Dupiriak pulled the male from the vehicle and placed him on the ground.  Officer McGrenera saw a silver revolver on the front passenger floor beneath where the male had been sitting.  Officer McGrenera secured the weapon and found it loaded with six bullets.  Through the open door, both Officer McGrenera and Officer Dupiriak observed in plain view latex gloves on the passenger side floor and a crowbar on the driver side floor.  Corporal [Trigg] ordered the Officers to stop the search and get a warrant, and the car was towed to Enforcement Towing.

Trial Court Order Denying Motion to Suppress, 3/27/14, at 1–4 (internal citations and paragraph numbering omitted).[1]

On October 17, 2012, the Commonwealth charged Appellant with burglary-criminal attempt, receiving stolen property, persons not to possess a firearm, firearms not to be carried without a license, possession of instrument of crime, loitering and prowling, and conspiracy. On June 21, 2013, Appellant filed a motion to suppress the physical evidence seized from his person and vehicle and his statements to police.

On July 17 and 25, 2013, the Honorable Patricia Jenkins held hearings on the motion to suppress. After Judge Jenkins was appointed to serve on this Court, the case was reassigned to the Honorable Mary Alice Brennan who held argument on the motion on February 27, 2014.[2] On March 27, 2014, Judge Brennan denied in part and granted in part the suppression motion. The trial court denied the suppression of the plastic trash bag

---

[1] On March 9, 2015, the trial court filed an opinion in compliance with Pa.R.A.P. 1925(a), concluding that the judgment of sentence should be affirmed. In support of this decision, the trial court incorporated by reference its March 27, 2014 order denying Appellant's suppression motion, which included Findings of Fact and Conclusions of Law "that offer a complete basis upon which the appellate courts can conduct a review." Trial Court Opinion, 3/9/15, at 2.

[2] We note that Appellant failed to include in the certified record the transcripts of the July 25, 2013, and February 27, 2014 suppression hearings. However, Appellant's co-defendant included these transcripts in the certified record accompanying his appeal, and they have now been certified as part of the official record in this appeal. We, therefore, will consider the merits of Appellant's suppression claims.

discovered in Appellant's waist, the latex glove found on the ground, Appellant's statements to the police, and the items seized from the blue Buick. The court granted the motion as to the latex gloves removed from Appellant's pockets.

On August 12 and 18, 2014, Judge Brennan conducted a nonjury trial and found Appellant not guilty of attempted burglary and guilty of the remaining offenses. Appellant was sentenced on November 12, 2014. On December 10, 2014, Appellant filed a timely notice of appeal.

Appellant presents the following issues for review:

1. Whether the Trial Court erred when it denied Appellant's Motion for Suppression as to the items seized from Appellant's person because Appellant was the subject of an illegal warrantless arrest that was not supported by probable cause?

2. Whether the Trial Court erred when it denied Appellant's Motion for Suppression as to the items seized from Appellant's person because the arrest was unlawful; and therefore, the search incident to arrest was not valid?

3. Whether the Trial Court erred when it denied Appellant's Motion for Suppression as to the statements made by Appellant because Appellant was under arrest when the statements were made; and therefore, should have been advised of his **Miranda**[3] rights?

4. Whether the Trial Court erred when it denied Appellant's Motion for Suppression as to the items seized from Appellant's vehicle because the police officers conducted an illegal warrantless search of Appellant's vehicle?

---

[3] **Miranda v. Arizona**, 384 U.S. 436 (1966).

5. Whether the Trial Court erred when it denied Appellant's Motion for Suppression as to the items seized from Appellant's vehicle because the police officers did not have a lawful right of access to view the items seized from Appellant's vehicle; and therefore, the plain view exception to the search warrant requirement is not applicable?

6. Whether the Trial Court erred when it failed to render conclusions of law in support of its denial of Appellant's Motion for Suppression as to the items seized from Appellant's vehicle?

Appellant's Brief at 8.

Our standard of review is well-settled:

When reviewing the denial of a motion to suppress evidence, we examine "the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in context of the record as a whole." *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 654 (2010). We then determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Id.* Our review of the application of the law to the facts is plenary. *Id.*

*Commonwealth v. Washington*, 51 A.3d 895, 897 (Pa. Super. 2012).

Appellant's first three arguments challenging the trial court's denial of his suppression motion are intertwined. Appellant's overarching assertion is that he was the victim of a warrantless arrest unsupported by probable cause. Appellant then claims that because his arrest was unlawful, the search of his person was invalid, and those items seized from that search must be suppressed. Third, Appellant claims that his statements to the police must be suppressed because he was not advised of his *Miranda* rights after he was arrested. The Commonwealth counters that Appellant was not subjected to a custodial arrest; instead, it was an investigative

detention that was supported by reasonable suspicion. Thus, resolution of Appellant's first three issues depends upon the nature of Appellant's contact with the police officers on the date in question. Given the nature of our inquiry, while we are bound by the suppression court's factual findings that are supported by the record, the question of whether an arrest occurred is a pure question of law subject to plenary review. *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014) (citation omitted).

Our jurisprudence recognizes three levels of police-citizen interactions. The first is a mere encounter, which requires no level of suspicion. *Commonwealth v. Daniels*, 999 A.2d 590, 596 (Pa. Super. 2010). The second level is an investigative detention, which must be supported by reasonable suspicion. *Id*. at 596–597. The third level is an arrest or custodial detention, which must be supported by probable cause. *Id.* at 597. "In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances." *Lyles*, 97 A.3d at 302 (citation omitted).

When we examine the totality of the circumstances, the focus is centered on whether the subject's movements have in some way been restrained by physical force or show of authority. However, when courts are making this determination, no single factor dictates whether a seizure has occurred. *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000). The United States Supreme Court and the Pennsylvania Supreme Court have

employed an objective test to determine whether a reasonable person would have felt free to leave or otherwise terminate the encounter. What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs. *Lyles*, 97 A.3d at 302–303 (quoting *Michigan v. Chestnut*, 486 U.S. 567, 573–574 (1988)).

The trial court analyzed the instant citizen-police interaction and concluded that the responding police officers affected a *Terry*[4] stop that was supported by reasonable suspicion. The court concluded as follows:

> [Appellant] is challenging the legality of the stop and is seeking suppression of the evidence that was recovered from the vehicle he was in and the suppression of any statement(s) he made to police. Since the parties concede [Appellant] was subjected to a "Terry stop" this Court must determine whether or not the Police had a reasonable suspicion to stop [Appellant].[5]
>
> Officer Dupiriak had reasonable suspicion to stop [Appellant] on the street, since (1) the officer was responding to a radio dispatch of a very recent burglary in progress identifying the suspect as a black male in a dark hoody, (2) as the officer

___

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

[5] We note that the trial court's decision was reasoned in part by its position that the parties "conceded" that Appellant was subjected to a *Terry* stop. No such concession is a part of the record and, in fact, is contradicted by Appellant's written motion to suppress, both counsels' representations at the hearings held on the motion, and by Appellant's post-motion hearing brief. However, since we also conclude that a *Terry* stop occurred in this instance, we need not expound on the trial court's reliance on this supposed concession.

was driving to the scene, he saw [Appellant], a black male in a dark sweatshirt, walking in the officer's direction only a few blocks from [the] crime scene, (3) [Appellant] turned and started running away as the officer approached. . . . This Court determines that the record in this case confirms that Officer Dupiriak had a reasonable suspicion to subject [Appellant] to a "Terry stop."

Trial Court Order Denying Motion to Suppress, 3/27/14, at 7–8.

Appellant assails the trial court's reasoning and asserts that the totality of the circumstances demonstrated instead that he was subject to an illegal arrest. Appellant offers that **Commonwealth v. Hannon**, 837 A.2d 551 (Pa. Super. 2003), compels this conclusion. In **Hannon**, this Court declared that "an arrest occurs when (1) the police intended to take appellant into custody, and (2) appellant was subjected to the actual control and will of the police." **Id**. at 554 (citation omitted). This Court determined that an arrest transpired when the police ordered the appellant out of a vehicle with weapons drawn, restrained him with handcuffs, searched him, placed him into a police car, transported him to the police station where **Miranda** rights were recited, and an interrogation followed. **Id**.

While the **Hannon** case is somewhat factually similar to the instant matter, it is distinguishable by the chronology of the relevant events. In this matter, when Appellant began to run in the opposite direction of Officer Dupiriak's police vehicle, the officer exited his vehicle and ordered Appellant to stop. Officer Dupiriak and Corporal Trigg then cornered Appellant with their guns drawn. Officer Dupiriak then "reholstered" his

weapon, forced Appellant to the ground, handcuffed him, and patted him down for "officer safety" and to "search for weapons or contraband." N.T., 7/25/13, at 8, 22–24. While the officer did not feel anything resembling weapons or contraband, he discovered a trash bag in Appellant's waistband and a latex glove lying on the ground next to him. *Id*. at 8–9. At this point, however, the situation varies from that examined in *Hannon*. Unlike the suspect in *Hannon*, Appellant was not immediately placed in the police vehicle and transported to the police station. This counters against a conclusion that, at this point, the officers intended to take Appellant into custody. Rather, the officers questioned Appellant as to the reason that he was in the area. Appellant responded that he had travelled from Philadelphia by trolley. Officer Dupiriak believed this was a peculiar story because the trolley stopped running two hours earlier. N.T., 7/25/13, at 9. Appellant then represented that he was headed to his girlfriend's house to retrieve some items, but could not identify an address where the girlfriend lived. *Id*. At this point, according to Officer Dupiriak, Appellant was arrested and placed in the police vehicle. *Id*. at 10.

"An encounter becomes an arrest when, under the totality of the circumstances, a police detention becomes so coercive that it functions as an arrest." *Commonwealth v. Charleston,* 16 A.3d 505, 514-515 (Pa. Super. 2011) (quotation omitted). A number of factors will determine if a detention has become an arrest, including "the cause for the detention, the detention's

length, the detention's location, whether the suspect was transported against his or her will, whether physical restraints were used, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel suspicions." *Id*. (quoting *Commonwealth v. Stevenson*, 894 A.2d 759, 770 (Pa. Super. 2006) (citations omitted)).

Herein, Appellant was detained because he met the description of a person involved in a suspected burglary, was in close proximity to the reported scene of the crime, and ran in the opposite direction of the police car responding to the crime report. The detention occurred on a street and did not consume a significant amount of time. The responding officers approached Appellant with guns drawn, pushed him to the ground and handcuffed him. He was then questioned as to his presence in that area. When Appellant provided an incredible reason for being near the scene of the supposed crime, he was then placed in the police car and transported to the police station.

Considering the totality of the circumstances, these factors weigh in favor of a conclusion that Appellant was subjected to an investigatory *Terry* stop and not an arrest. While the officers drawing their weapons and pushing Appellant to the ground were forcible tactics, none of the other factors indicates that an arrest occurred. Notably, under Pennsylvania law, "the handcuffing of [a defendant is] merely part and parcel of ensuring the

safe detaining of the individuals during the lawful ***Terry*** stop." ***Commonwealth v. Guillespie***, 745 A.2d 654, 660–661 (Pa. Super. 2000). This Court has further stated that a custodial arrest does not arise until a defendant is not only handcuffed, but also transported by the police to jail. ***Charleston***, 16 A.3d at 515; ***see also Commonwealth v. Rosas***, 875 A.2d 341, 348 (Pa. Super. 2005) (finding that the fact that police "ordered Rosas out of the car and placed him in handcuffs . . . [did] not support the conclusion that Rosas was under arrest.").

Instantly, Appellant was not placed into the police car and transported to the police station until after he was unable to provide a credible reason for his whereabouts in proximity to the time and place of the reported crime. Additionally, the evidence does not demonstrate that the place and duration of the detention or the character of the officers' questions were coercive in nature. Based on these facts, we conclude Appellant was subjected to an investigative detention and not a custodial arrest. Therefore, the officers needed only reasonable suspicion that criminal activity was afoot to effectuate a constitutional detention of Appellant. ***Commonwealth v. Davis***, 102 A.3d 996, 999–1000 (Pa. Super. 2014), *appeal denied*, 113 A.3d 278 (Pa. 2015).

The reasonable suspicion necessary to conduct an investigative detention is a less demanding standard than the probable cause needed to effectuate an arrest. ***Commonwealth v. Fell,*** 901 A.2d 542, 545 (Pa.

Super. 2006) (quoting **Alabama v. White**, 496 U.S. 325, 330 (1990)). "The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances." **Commonwealth v. Holmes**, 14 A.3d 89, 96 (Pa. 2011). In assessing all the circumstances, courts must give weight to the inferences that a police officer may draw upon their training and experience. **Id.** at 95.

We find **Commonwealth v. Walls**, 53 A.3d 889, 893–895 (Pa. Super. 2012) to be instructive in our resolution of whether reasonable suspicion existed here. In **Walls**, the police officer received information over his radio that a black male wearing a black coat and black jeans was observed at an intersection carrying a gun. The officer stopped an individual who matched the description of the suspect with regard to gender, race, and clothing one-half block away from the identified location. After seeing the officer, the individual fled. **Id**. at 894. The **Walls** Court agreed with the suppression court that these circumstances, when added together, amounted to the reasonable suspicion required for the responding officer to stop the male. **Id**. at 893. In so deciding, the Court made particular note of the United States Supreme Court's observation in **Illinois v. Wardlow**, 528 U.S. 119, 124 (2000) that "[h]eadlong flight—wherever it occurs—is the consummate act of evasion. . . ." **Walls**, 53 A.3d at 893 n.4. The **Walls** Court thus concluded that unprovoked flight, even when not in a high crime area,

- 13 -

combined with the actor's proximity to the subject location and his match to the description of the suspect, gave "rise to reasonable suspicion that criminal activity was afoot." *Id*. at 894.

In the case *sub judice*, at approximately 4:00 a.m., Officer Dupiriak observed Appellant two blocks from the scene of a reported attempted burglary. Appellant, who met the general description of the suspect in the crime, ran in the opposite direction as the officer approached him. Relying on **Walls**, these facts supplied Officer Dupiriak with the requisite reasonable suspicion to detain Appellant.

Given our conclusion that Appellant was detained and not arrested until after the officer's questioning, Appellant's tandem arguments that the items seized must be suppressed because the search of his person was incident to an illegal arrest and that his statements to the police were obtained in violation of his post-arrest **Miranda** rights likewise fail. However, Appellant also argues that even if he was subject to an investigative detention, the trash bag found in his waistband and the latex glove discovered on the ground must be suppressed because Officer Dupiriak's patdown exceeded the permissible scope of a **Terry** frisk.

The trial court resolved the issue of the legality of the seizure of the trash bag and gloves as follows:

> Officer Dupiriak's recovery of the latex glove on the ground in plain view and the removal of the black trash bag in plain view hanging over [Appellant's] waist belt was perfectly permissible. Officer Dupiriak went too far, however, when he reached into

- 14 -

[Appellant's] pocket and pulled out a blue latex glove from his front right jean pocket and a clear latex glove from his front left jean pocket. . . . There was nothing about these two gloves that suggested they were weapons or contraband. Therefore evidence of these two gloves is suppressed as to [Appellant] only.

Trial Court Order Denying Motion to Suppress, 3/27/14, at 8–9.

Appellant argues that the plain view doctrine did not justify the seizure of the trash bag or glove on the ground because there was no reason for Officer Dupiriak to believe that those items were incriminating.[6] Appellant is incorrect.

A police officer has probable cause to believe that an object is incriminating where "the facts available to the officer would 'warrant a man of reasonable caution in the belief', that certain items may be contraband or stolen property or *useful as evidence of a crime*[.]" **Commonwealth v. Wright**, 99 A.3d 565, 569 (Pa. Super. 2014) *appeal denied*, 116 A.3d 605 (Pa. 2015) (emphasis in original) (quoting **Commonwealth v. McEnany**, 667 A.2d 1143, 1148 (Pa. 1995) (quotation omitted)). Here, the police were

---

[6] Appellant also contends that Officer Dupiriak's search was not for officer safety; rather, it constituted an "illegal attempt to discover evidence." Appellant's Brief at 29. Not only is this assertion directly contrary to the only record evidence, *i.e.*, Officer Dupiriak's testimony that Appellant was patted down for "officer safety" and to "search for weapons or contraband," **see** N.T., 7/25/13, at 8, 22–24, Appellant cites no legal authority to support this representation. Absent Appellant's reference to legal authorities and development of a cogent argument, we find this issue waived. **Commonwealth v. Antidormi**, 84 A.3d 736, 754 (Pa. Super. 2014) *appeal denied*, 95 A.3d 275 (Pa. 2014); **see also** Pa.R.A.P. 2119(a).

investigating a suspected burglary. It was reasonable, therefore, for Officer Dupiriak to conclude that a latex glove and a large trash bag could feasibly be viewed as evidence of this crime.

Appellant's third claim tied to his position that he was arrested without probable cause is that his statements to the police were illegally obtained because he was not apprised of his **Miranda** warnings. Appellant further contends that the statements were the product of improper police interrogation. Appellant's arguments do not warrant relief.

The trial court addressed the legality of Appellant's claim regarding his statements to the police, as follows:

> The Court finds that the officer's questions to [Appellant] were succinct enough to fall within the "moderate number of questions" permissible during a Terry stop. Moreover, the officers had a basis independent of the illegally seized evidence to ask [Appellant] about where he was coming from and going, and about the glove on the ground in plain view and the trash bag in his belt also in plain view. . . .
>
> The Court further finds that Miranda warnings were not necessary before the officers asked [Appellant] questions during the Terry stop. [Appellant] was not in custody during this Terry stop, and without a custodial interrogation, Miranda warnings are unnecessary.

Trial Court Order Denying Motion to Suppress, 3/27/14, at 9–10 (citations omitted).

We conclude that the trial court's factual findings are supported by the record and that its legal conclusions are correct. As we have determined, the scrutinized contact between Appellant and the police was an

- 16 -

investigative detention rather than a custodial arrest. An investigative detention does not require the protections and warnings afforded by *Miranda*. *Commonwealth v. Pakacki*, 901 A.2d 983, 988 (Pa. 2006). Moreover, we agree with the trial court that the questions posed by the officers during the investigative detention—where Appellant was coming from and where he was going—were not designed to elicit incriminating information. Accordingly, reversal of the order denying Appellant's suppression motion is not warranted on the *Miranda* issue.

Appellant's final three issues concern the search of Appellant's vehicle. Initially, we confront Appellant's claim of error related to the trial court's failure to render conclusions of law in support of its decision denying Appellant's motion to suppress the items seized from the vehicle.

Under Pa. R. Crim. P. 581(I), at the conclusion of a suppression hearing, "the judge shall enter . . . findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights. . . ." In *Commonwealth v. Millner*, 888 A.2d 680, 688 (Pa. 2005), the Pennsylvania Supreme Court expressed displeasure with courts that do not comply with Rule 581, but offered that a remand is not always necessary to correct this deficiency. We conclude that the trial court's omission herein does not compel a remand. First, it is noteworthy that the trial court did issue findings of fact detailing the search of Appellant's vehicle. *See* Trial Court Order Denying Motion to Suppress, 3/27/14, at 3–4. Second, in those

findings of fact, the trial court characterized the items seized from Appellant's vehicle as being in "plain view," arguably a legal conclusion. *Id*. at 4, ¶17. Third, Appellant's challenges to the vehicle search pose legal questions. Where the appeal of the determinations of the suppression court entail allegations of legal error, that court's legal conclusions are not binding on a reviewing court, "whose duty it is to determine if the suppression court properly applied the law to the facts." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (quoting *Commonwealth v. Mistler,* 912 A.2d 1265, 1269 (Pa. 2006) (quotation omitted)). *See also*, *Lyles*, 97 A.3d at 302 (pure questions of law are subject to plenary review). Therefore, even if the trial court had issued conclusions of law, we would not be required to accept those determinations.

The trial court issued the following findings of fact related to the search of Appellant's vehicle:

> 12. While Officer Dupiriak was intercepting and arresting [Appellant], Officer McGrenera talked with Sallie for about a half hour and then left Sallie's house in his vehicle.
>
> 13. About one to two blocks away from Sallie's house, Officer McGrenera saw a Buick matching the description of the car that Sallie saw. The car was blue with gray panels missing on the side and had tinted windows, just as Sallie had described.
>
> 14. Officer Dupiriak, who had returned after leaving [Appellant] at the police station, arrived at this location at the same time as Officer McGrenera. Officer Dupiriak observed Officer McGrenera call Delcom dispatch and state that he found a vehicle matching the description of the Buick that had possibly been involved in the burglary attempt.

15. A male [Appellant's co-defendant] was sitting in the front passenger seat of the Buick, hunched over trying to hide while moving around. Officers McGrenera and Dupiriak approached the car from the rear with guns drawn, and Officer McGrenera ordered the male to exit the vehicle. The male did not comply.

16. Officer McGrenera smashed the driver side windows to look inside the vehicle because it was heavily tinted, and the male exited on the passenger side. Officer Dupiriak pulled the male from the vehicle and placed him on the ground.

17. Officer McGrenera saw a silver revolver on the front passenger floor beneath where the male had been sitting. Officer McGrenera secured the weapon and found it loaded with six bullets. Through the open door, both Officer McGrenera and Officer Dupiriak observed in plain view latex gloves on the passenger side floor and a crowbar on the driver side floor.

18. Corporal [Trigg] ordered the Officers to stop the search and get a warrant, and the car was towed to Enforcement Towing. The affidavit of probable cause attached to the search warrant states that the two officers seized the revolver, latex gloves and crowbar at the scene of [Appellant's co-defendant's] apprehension. The warrant issued the next day, and the police recovered multiple other items from the car.

Trial Court Order Denying Motion to Suppress, 3/27/14, at 3–4 (record references omitted).

Appellant first asserts that the search of his vehicle was illegal because the police officers lacked probable cause and exigent circumstances to search it without a warrant. The Commonwealth counters that the Pennsylvania Supreme Court's plurality opinion in ***Commonwealth v. Gary***, 91 A.3d 102, 138 (Pa. 2014) ("the prerequisite for a warrantless search of a motor vehicle is probable cause; no exigency beyond the inherent mobility of a mobile is required") eliminated the exigent circumstances requirement for

a warrantless search, but offers only a conclusory statement that the requisite probable cause existed here. Because the Commonwealth does not present a developed factual or legal foundation for its probable cause pronouncement, we will confine our review in this matter to whether the plain view exception to the search warrant requirement applies.

The plain view doctrine permits warrantless seizures of objects when: "(1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." *Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014) *appeal denied,* 106 A.3d 724 (Pa. 2014). Thus, we must first ascertain if the responding officers viewed the items in the Appellant's vehicle from a lawful vantage point. The relevant inquiry is whether the officers were legally authorized to order Appellant's co-defendant to exit the vehicle and whether it was constitutionally permissible to force him out of the car as these were the precipitating events leading to the observation of the items in the vehicle.

In *Commonwealth v. Pratt*, 930 A.2d 561 (Pa. Super. 2007), this Court held that a police officer may order a passenger of a stopped vehicle to remain inside or get back into the vehicle without offending the passenger's rights under the Fourth Amendment, "even absent a reasonable suspicion that criminal activity is afoot." *Id*. at 564; *see also Commonwealth v. Brown*, 654 A.2d 1096, 1102 (Pa. Super. 1995)

(relying on **Pennsylvania v. Mimms**, 434 U.S. 106 (1977), and holding that "police may request both drivers and their passengers to alight from a lawfully stopped car without reasonable suspicion that criminal activity is afoot."). In this case, the initial radio dispatch, a neighbor eyewitness, and the victim of the attempted burglary all related that a blue Buick, with a gray side panel and tinted windows, was involved in the crime. N.T., 7/17/13, at 10, 14, 17–18. Approximately one to two blocks away from the site of the burglary, the officers saw a blue Buick with grey side panels with tinted windows. Although the tinted windows impaired the officers' ability to see into the vehicle, they were able to observe the person moving around in the passenger seat, "hunched over on the floor facing out the rear window." N.T., 7/25/13, at 12. At this point, the police officers were well within their rights to request the occupant to exit the vehicle. **See Pratt**, 930 A.2d at 564 (officer may order occupants of a vehicle to exit the vehicle even absent a reasonable suspicion of criminal activity).

The next question is whether the officers could justifiably force Appellant's co-defendant from the vehicle. When the occupant remained in the vehicle after repeated warnings to exit, Officer McGrenera smashed the driver side window. N.T., 7/17/13, at 27. When the occupant then opened the passenger side door, Officer Dupiriak pulled him from the vehicle and pushed him to the ground. **Id**. At this point, the officers observed a revolver and latex gloves on the passenger side floor and a crowbar on the

driver's side floor through the open passenger door. N.T., 7/17/13, at 53–54; 7/25/13, at 13. Thus, we must decide if the officers acted legally leading up to that moment when they secured an advantageous position to view the items on the vehicle's floor.

Our decision in *Commonwealth v. Murray*, 936 A.2d 76 (Pa. Super. 2007), is helpful to this inquiry. In *Murray*, a police officer observed significant movement in a stopped vehicle, but, because of the tinted windows, could not discern the nature of the movement. Due to the excessive movement, the officer pulled the occupant out of the vehicle, frisked him to make sure he had no weapon because he was concerned for his and his partner's safety. *Id*. at 79. While the *Murray* Court did not specifically address the propriety of the occupant's forceful exit by the police officer, it determined that these facts were sufficient to allow the officer to properly conclude that Murray could have been armed and justified a limited search for weapons in the passenger compartment of the vehicle. *Id*. at 80.

What we extrapolate from the holding in *Murray* is that if legitimate concerns of officer safety can validate a warrantless search for weapons in an automobile, such considerations can also legitimize the officers' use of reasonable force to remove the vehicle's occupant. The vehicle's close proximity to the site of the burglary and its match to the description of the car observed at the crime scene provided the officers with the reasonable suspicion that the person occupying it may have been involved in the

robbery. Additionally, the occupant was seen moving about in the vehicle, hunched over and facing backwards, and was unresponsive to their repeated orders to exit the vehicle. Considering all these circumstances, the police were entitled to ensure their safety by removing Appellant's co-defendant from the vehicle. Accordingly, the officers did not violate the Fourth Amendment in arriving at a position from which the evidence could be plainly viewed.

Second, there is no question that the objects in plain view, a revolver, a crowbar, and latex gloves, were incriminating. Appellant, however, challenges whether the lawful right of access prong of the plain view doctrine test has been satisfied. In *Commonwealth v. Brown*, 23 A.3d 544 (Pa. Super. 2011) (*en banc*), this Court decreed that the portion of the Pennsylvania Supreme Court's plurality decision in *Commonwealth v. McCree*, 924 A.2d 621 (Pa. 2007), holding that "where police officers observe incriminating-looking contraband in plain view from a lawful vantage-point, the lack of advance notice and opportunity to provide a warrant provides the officers with a lawful right of access to seize the object in question" had precedential value and applied this rationale in conducting a plain view analysis. *Brown*, 23 A.3d at 557.

Applying the lawful right of access principle as set forth in *Brown,* we conclude that the warrantless seizure was proper. The officers' observation of a gun, crowbar, and latex gloves in Appellant's vehicle created probable

cause to believe that a crime had been committed and that evidence pertaining to the crime was present in Appellant's vehicle. While the officers had some notice that the vehicle was possibly linked to the reported burglary, they had no notice that they would encounter the vehicle in that location or that the vehicle would carry evidence of a crime. *See Brown*, 23 A.3d at 554 (noting that "[t]he plurality in *McCree* favored the "*Baker/Rodriguez* standard . . . allow[ing] warrantless searches where officers" have no particular knowledge regarding the subject vehicle). Additionally, because the vehicle was occupied and the occupant was moving about suspiciously, the police were required to act immediately and did not have an opportunity to obtain a warrant before observing the challenged contraband in Appellant's vehicle. We, therefore, conclude that the officers had a lawful right of access to the items and their warrantless seizure passed constitutional muster.

Based on the foregoing, we conclude Appellant's arguments on appeal are devoid of merit. Accordingly, the trial court's November 12, 2014 judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/13/2016</u>