J-S11033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DENNIS EDWARD YORK | : | |
| | : | |
| Appellant | : | No. 1124 WDA 2016 |

Appeal from the Judgment of Sentence July 14, 2016
In the Court of Common Pleas of McKean County
Criminal Division at No(s):  CP-42-CR-0000146-2016,
CP-42-CR-0000635-2015

BEFORE:    OLSON, RANSOM, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED FEBRUARY 28, 2017**

Appellant Dennis Edward York appeals from the judgment of sentence entered in the Court of Common Pleas of McKean County on July 14, 2016, following his jury trial convictions of one count each of Kidnapping,[1] Aggravated Assault,[2] Unlawful Restraint,[3] Simple Assault,[4] Indecent Assault,[5] Summary Harassment,[6] and Person not to Possess a Firearm.[7]  Appellant's

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. 2901(a)(3).
[2] 18 Pa.C.S.A. 2702(a)(1).
[3] 18 Pa.C.S.A. 2902(a)(1).
[4] 18 Pa.C.S.A. 2701(a)(1).
[5] 18 Pa.C.S.A. 3126(a)(2).
[6] 18 Pa.C.S.A. 2709(a)(1).
[7] 18 Pa.C.S.A. 6105(a)(1).

counsel also has filed an **Anders**[8] brief together with a petition to withdraw as counsel.  Following our review, we grant counsel's petition to withdraw and affirm Appellant's judgment of sentence.

At trial, Tanya York testified that on September 30, 2015, she and Appellant, her husband, had been separated and she had been seeing another man.  N.T., 4/11/16, at 9, 15.  Despite the fact that Ms. York had been involved in a relationship with someone else, Appellant continued to reside with Ms. York because he "wouldn't leave."  *Id*. at 15.  That evening, Ms. York had been drinking alcohol in a bar in Eldred, although she was not intoxicated.  *Id*.  At approximately 10:00 p.m., Appellant arrived at the bar and drove Ms. York home.  *Id*. at 13.

When they reached the front door, Appellant grabbed Ms. York by the hair and told her they were "going to f'n talk."  Appellant dragged her back to his Jeep, physically put her in the passenger side, and drove off in the dark.  *Id*.  The drive lasted approximately ten to fifteen minutes, and Ms. York ultimately realized she was in an unfamiliar wooded area.  *Id*. at 14.  Appellant parked the vehicle and repeatedly struck Ms. York in the face and the back of her head as he questioned her as to why she had been seeing another man.  *Id*. at 15.  Appellant demanded that Ms. York call the individual and tell him their relationship was over.  Frightened, Ms. York

---

[8] **Anders v. California**, 386 U.S. 738 (1967)

wanted to comply; however, due to the stress of the situation, Ms. York had forgotten the person's phone number. Each time she stated the phone number incorrectly, Appellant "backhanded" her in the face. *Id*. Appellant continuously drank alcohol throughout the time he and Ms. York were in the secluded, wooded area. *Id*. at 20.

Appellant told Ms. York he was going to leave her in the woods for the bears and violently attempted to pull her from the Jeep by her arms and hands. *Id*. at 15, 22. When Ms. York resisted, he choked her. *Id*. at 15-16. Appellant continued to hit Ms. York in the back of the head and punch her in the face until approximately 5:00 a.m. He also kicked her in the side when he pulled her out of the vehicle and picked her up by her hair. Ms. York described his treatment as terrorizing. *Id*. at 16-17, 22. As a result of her very painful injuries, Ms. York suffered numerous bruises, a fractured shoulder and a concussion. *Id*. at 16, 23.

Immediately after Appellant brought Ms. York back to her home, he disrobed and had non-consensual sex with her. **Id**. at 24-25.[9] The next morning after her daughter had gone to school, Ms. York told Appellant to leave the home immediately. Appellant apologized for the incident and left willingly. *Id*. at 26. Ms. York's daughter called her and explained she was

_____

[9] Specifically, Ms. York testified that she "didn't agree or disagree" to have sexual relations with Appellant and did not attempt to resist him because she "was exhausted[,] numb[,] [and] had no more fight in [her]." **Id**. at 25.

too upset to stay at school. Ms. York picked up her daughter and the two proceeded to the hospital. *Id*. at 28.

Medical personnel testified regarding Ms. York's injuries. Stephanie Schmieg, a physician assistant working in the emergency room of the Bradford Regional Medical Center, testified that she treated Ms. York on October 1, 2015. At that time, Ms. York complained of pain and bruising on her face and discomfort in her throat and neck area. *Id*. at 58-59. Ms. Schmieg observed bruises on Ms. York's right eye, lips, right arm, right elbow and left arm. She also noticed redness on the front of Ms. York's neck. *Id*. at 59. Ms. Schmieg ultimately diagnosed Ms. York with a concussion and multiple contusions. *Id*. at 62.

Dr. Henri Lamothe provided an expert opinion and diagnosis regarding Ms. York's injuries and treatment. *Id*. at 68. Dr. Lamothe explained Ms. York presented with numerous complaints including headache, dizziness, and multiple bruises. *Id*. at 70. Dr. Lamothe opined Ms. York had suffered an "aggravated assault," concussion and multiple contusions. *Id*. at 71-74, 78.

Criminal investigator Pennsylvania State Trooper Mary Gausman testified that on October 26, 2015, she received a report of a violent incident regarding Ms. York and Appellant from Trooper Conner[10] who had interviewed Ms. York previously. Trooper Gausman interviewed Ms. York

_____

[10] Trooper Conner's first name is not apparent from the record.

who told her "[b]asically everything that she said on the stand today." *Id*. at 82-83. In addition, Ms. York informed Trooper Gausman Appellant had a gun. The parties stipulated on the record that Appellant had been convicted of a prior offense the result of which he was prohibited from possessing a firearm. *Id*. at 93, 95.

Ms. York's fifteen-year-old daughter B.P. testified that on September 30, 2015, she had texted Appellant to inquire about her mother's whereabouts. Appellant responded he did not know where Ms. York was and that he was alone drinking beer. Appellant said he suspected Ms. York was at her "other boyfriend's" home. *Id*. at 109-110. B.P. was awake at 5:00 a.m., although she did not see her mother enter with Appellant. She had been lying in Ms. York's bed when Appellant came in and told her to, "Go the F upstairs." *Id*. at 116. B.P. later heard Appellant tell Ms. York he "fisted" her because he was unable to do so in the Jeep. *Id*. at 117.

The first time B.P. saw her mother was when she woke up for school around 6:00-6:30 a.m. on October 1, 2015. B.P. first heard Ms. York say, "[Y]ou were going to let me get eaten by the bears," and Appellant calmly denied the statement. *Id*. at 115. B.P. next observed that her mother was clad only in a robe, although she would not normally dress that way, and that she was bloody, bruised and dirty. *Id*. at 113. B.P. noticed handprints on Ms. York's neck and heard Appellant admit to having sex with her mother. *Id*. at 116-117.

Ms. Kelly Kroah, the girlfriend of Appellant's nephew, testified she is a manager of the Ole Blue bar in Eldred and knows both Appellant and Ms. York. N.T., 4/12/16, at 9. Ms. Kroah explained that Ms. York became "very intoxicated" on September 30, 2015, and at one point fell on the dance floor. This prompted Ms. Kroah to call Appellant to pick up Ms. York. Ms. York needed Ms. Kroah's assistance to walk out of the bar, and she stumbled as she tried to get into Appellant's vehicle. *Id*. at 10. Ms. Kroah stated Ms. York cut her lip when she fell off her barstool and onto the floor. *Id*. at 11.

Appellant testified in his own defense and stated that Ms. York's prior testimony had been inaccurate. N.T., 4/12/16, at 26. Appellant explained that on September 30, 2015, Ms. Kroah sent him a text message wherein she asked him to come to the Blue Bar to pick up Ms. York who was intoxicated. *Id*. at 27. He stated that when he arrived, he noticed Ms. York had a bloody lip and that she was limping, and she continued to stumble as he and Ms. Kroah attempted to get her in the passenger side of his Jeep. *Id*. at 30-31. Appellant related that as the pair was returning home, Ms. York, "giggling and carrying on in the passenger seat," suggested that they proceed to "the lookout" to "watch the stars," as they had several times before. *Id*. at 33-34. Appellant pulled his vehicle into the wooded area, and the two leaned against the front end of the Jeep while Ms. York drank beer alone, as he does not drink alcohol. *Id*. at 35-36, 44.

Appellant maintained he did not inflict any of Ms. York's bruises and explained that she sustained the injuries to her mouth from her fall in the

bar and the others when she fell down a hill in the woods while urinating. *Id*. at 37-39. Appellant added he had difficulty helping Ms. York up, as her pants were around her ankles, and he was forced to grab her by the arms and wrists to pull her backwards over the hill. *Id*. at 38-39. Appellant estimated it had taken him approximately twenty minutes to get Ms. York to the top of the embankment. Appellant "dusted her off," after which Ms. York indicated she wanted to stay and drink some more beer, and Appellant agreed. *Id*. at 40. The two reminisced about past experiences, as Appellant had planned to move out of the home the next day. *Id*. at 42.

At some point, Ms. York fell over the bank two more times, and after the third fall, Appellant decided it was time to bring her home. Appellant claimed he never had sexual relations with Ms. York that evening. *Id*. at 43. Appellant said Ms. York did not want a divorce, and that she had helped him move his belongings out of the home the next day. *Id*. at 45, 50-51. Appellant also denied the pistol in the courtroom belonged to him and represented that he never had owned a firearm. *Id*. at 48.

Ms. York presented rebuttal testimony at which time she denied ever needing help to Appellant's Jeep on September 30, 2015. *Id*. at 63. She indicated that she had a conversation with Ms. Kroah following the latter's testimony that day at which time Ms. Kroah told Ms. York she loved her and "it was nothing personal." *Id*. She denied ever going to the Rock City hill overlook to "stargaze" with Appellant, and she stated he had never picked her up at the Blue Bar before that evening, as it is located only a block from

her home. *Id*. at 64-65. She stressed she did not fall down an embankment, but rather was beaten by Appellant "for hours on end." *Id*. at 65.

On July 15, 2016, Appellant was sentenced to an aggregate term of thirty (30) years to sixty (60) years in prison. Appellant was also determined to be a Tier I sex offender and required to register under Megan's Law for a period of fifteen (15) years.

Appellant filed a timely notice of appeal on August 4, 2016. On August 9, 2016, the trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a motion for extension of time in which to file the same, and in lieu of filing a concise statement, on September 26, 2016, counsel filed a notice of intent to file an *Anders* brief with this Court pursuant to Pa.R.A.P. 1925(c)(4).[11] On December 12, 2016, counsel filed a brief pursuant to *Anders* and its Pennsylvania counterpart *Commonwealth v. Santiago*,

---

[11] In response to this notice, on October 28, 2016, the trial court filed an order wherein it noted counsel's intention to withdraw and directed the Clerk of Courts to transmit the record to the Superior Court. We caution that the filing of a statement of intent to withdraw as counsel pursuant to *Anders* and Rule 1925(c)(4) does not necessarily relieve the trial court of its duty to provide the rationale for its decision under Rule 1925(a)(1); however, as we are able to discern from the record the reasons for the trial court's order and the issue Appellant presents on appeal, we refrain from remanding for a thorough Rule 1925(a) opinion.

602 Pa. 159, 978 A.2d 349 (2009)[12] together with an application to withdraw as counsel. Appellant has filed no further submissions either *pro se* or through privately-retained counsel. The Commonwealth filed a letter in lieu of a brief with this Court on December 22, 2016.

Before addressing the question raised on appeal, we must first resolve counsel's petition to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*). **See also Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa.Super. 2005) (citation omitted) (stating "[w]hen faced with a purported **Anders**, brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw."). There are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on appeal. The procedural mandates are that counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

---

[12] **Anders** set forth the requirements for counsel to withdraw from representation on direct appeal, and our Supreme Court applied **Anders** in **Santiago**.

*Commonwealth v. Cartrette*, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*) (citation omitted). In addition, our Supreme Court in *Santiago* stated that an *Anders* brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, *supra* at 178-79, 978 A.2d at 361. Counsel also must provide the appellant with a copy of the *Anders* brief, together with a letter that advises the appellant of his or her right to "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court's attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa.Super. 2007). Substantial compliance with these requirements is sufficient. *Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa.Super. 2007).

Herein, counsel contemporaneously filed his Motion to Withdraw and an *Anders* brief. The motion states counsel's determination that no non-frivolous appellate issues exist. *See* Motion to Withdraw at ¶ 3. The Motion further explains that counsel notified Appellant of the withdrawal request and forwarded a copy of the brief to Appellant together with a letter

explaining his right to proceed *pro se* or with new, privately-retained counsel to raise any additional points or arguments that Appellant believed had merit. **See id.** at ¶ 4; **see also** Letter to Appellant, dated December 9, 2016.

In the **Anders** brief, counsel provides a detailed summary of the facts and procedural history of the case with citations to the record, refers to evidence of record that might arguably support the issue raised on appeal challenging the sufficiency of the evidence, provides citations to relevant case law, and states his conclusion that the appeal is wholly frivolous and his reasons therefor. **See Anders** brief at 3-5. Accordingly, counsel has substantially complied with the requirements of **Anders** and **Santiago**. As Appellant filed neither a *pro se* brief nor a counseled brief with new, privately-retained counsel, we review this appeal based on the issue of arguable merit raised in the **Anders** brief wherein counsel presents the following question for this Court's review: "Was the evidence sufficient to support the jury's verdict?" **Anders** brief at 3.

The standard of review for a challenge to the sufficiency of the evidence is as follows:

> In determining whether the evidence was sufficient to support a defendant's conviction, we must review the evidence admitted during the trial along with any reasonable inferences that may be drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. If we find, based on that review, that the jury could have found every element of the crime beyond a reasonable doubt, we must sustain the defendant's conviction.

*Commonwealth v. Daniels*, 999 A.2d 590, 594 (Pa.Super. 2010) (citation omitted).

Appellant was convicted of the following seven, statutorily defined crimes:

**Kidnapping**

**(a) Offense defined.--** Except as provided in subsection (a.1), a person is guilty of kidnapping if he unlawfully removes another a substantial distance under the circumstances from the place where he is found, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following intentions:
   (3) To inflict bodily injury on or to terrorize the victim or another.

18 Pa.C.S.A. § 2901(a)(3).

**Aggravated Assault**

**(a) Offense defined.--**A person is guilty of aggravated assault if he:
   (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa. C.S.A. § 2702(a)(1).

**Unlawful restraint**

**(a) Offense defined.--** Except as provided under subsection (b) or (c), a person commits a misdemeanor of the first degree if he knowingly:
   (1) restrains another unlawfully in circumstances exposing him to risk of serious bodily injury[.]

18 Pa.C.S.A. § 2902(a)(1).

**§ 2701. Simple assault**

**(a) Offense defined.--** Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

   (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S.A. § 2701(a)(1).


**§ 3126. Indecent assault**

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

   (2) the person does so by forcible compulsion[.]

18 Pa.C.S.A. § 3126(a)(2).


**§ 2709. Harassment**

**(a) Offense defined.--**A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:

   (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same[.]

18 Pa.C.S.A. § 2709(a)(1).

**§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**

**(a) Offense defined.--**

   (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to

possess, use, control, sell, transfer or manufacture a firearm in
this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

Instantly, viewing all of the evidence in the light most favorable to the Commonwealth as the verdict winner, we find there was sufficient evidence for the jury to find that Appellant forced Ms. York into his vehicle against her will and drove her to an unknown location in a wooded area. Appellant terrorized Ms. York by threatening to leave her alone in the secluded area. He slapped, punched, kicked and choked her over a period of hours resulting in her sustaining a concussion and multiple contusions. When Appellant finally returned Ms. York to her home, he had non-consensual sex with her. In addition, he was in possession of a firearm, although as a convicted felon he was prohibited from doing so. Thus, there was sufficient evidence to enable the fact-finder to find every element of Appellant's crimes beyond a reasonable doubt, and a challenge to the sufficiency of the evidence would be frivolous.

Petition to withdraw as counsel granted. Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017