J-A05008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2220 EDA 2023 |

Appeal from the Order Entered August 10, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-DP-0000264-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: C.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2221 EDA 2023 |

Appeal from the Order Entered August 10, 2023
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CP-23-DP-0000265-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: T.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: R.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2222 EDA 2023 |

Appeal from the Order Entered August 10, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-DP-0000266-2018

BEFORE:  DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY DUBOW, J.:                         **FILED APRIL 17, 2024**

Appellant, R.S. ("Mother"), appeals from the August 10, 2023 order that changed the permanency goal of her three children, nine-year-old T.S ("T.S. (I)"), six-year old C.J., and five-year-old T.S. ("T.S. (II)") (collectively, "Children"), from Reunification to Adoption.[1]  Appellant's counsel, Shelly Chauncey, Esq., has filed a petition to withdraw as counsel and an **_Anders_**[2] Brief, to which Mother has not filed a response.  Upon review, we grant counsel's petition to withdraw and affirm on the basis of the trial court's October 6, 2023 opinion.

In its Pa.R.A.P. 1925(a) opinion, the trial court has provided a thorough and accurate factual and procedural history, which is supported by the record, and we adopt it for purposes of this appeal.  Trial Ct. Op., 10/6/23, at 1-15. Briefly, Mother and Children became known to the Delaware County Children and Youth Services (the "Agency") in 2018 for concerns regarding neglect and physical abuse of Children.  After the Agency implemented services and safety plans to no avail, the trial court adjudicated Children dependent on December 11, 2018.  The court ordered Mother to participate in mental health and drug and alcohol evaluations and comply with recommendations, participate in parenting education, obtain suitable housing, and consistently visit with Children.

---

[1] Children's father is not a party to this appeal.

[2] **_Anders v. California_**, 386 U.S. 738 (1967).

Children have been in the custody of the Agency for approximately five years. Mother has weekly supervised visits with Children, alternating in-person visits with virtual visits. In the past, Mother has been inconsistent with visitation. During the past year, she has consistently attended in-person visits but has been inconsistent with virtual visits. Mother often brings inappropriate food for Children, despite being aware of their dietary restrictions. During visits, she has limited engagement with Children and typically just watches them play together. When staff tries to redirect Mother to engage with Children, she is dismissive and belligerent. On one occasion in May 2023, Mother threatened to call the cops and to "grip up," or grab a firearm, when the caseworker attempted to assist Mother with her interactions with Children.

The Agency categorizes Mother's progress as moderate. While Mother has successfully completed drug and alcohol treatment and her last three random drug screens have been negative, Mother has failed to follow through with recommended mental health treatment.

Children have a myriad of physical, emotional, and behavioral issues.[3] During the past five years, the Agency has placed T.S.(I) and C.J. in six

---

[3] T.S. (I) is diagnosed with Oppositional Defiant Disorder ("ODD"), Attention Deficit Hyperactivity Disorder ("ADHD"), and aggressive behaviors for which he receives medication management and individual therapy. C.J. is diagnosed with ODD, ADHD, and Post Traumatic Stress Disorder. She receives numerous medications and attends weekly trauma-based therapy and bi-weekly individual therapy. T.S.(II) has exhibited extreme and violent behaviors and has been asked to leave several daycares. He is diagnosed with Cerebral Palsy and has urological issues that may require surgery. His foster mothers are home-schooling him and are in the process of arranging appropriate therapy.

different foster homes while the Agency has placed T.S.(II) in seven different homes. Children are currently placed in pre-adoptive homes where they are thriving and receiving the necessary educational, behavioral, medical, and emotional services. T.S. (I) and C.J. are placed in a foster home together and have both expressed a desire to stay in their current foster home forever. T.S.(II) is placed in a separate foster home and has expressed that he wants to remain living there.

On August 10, 2023, after a permanency review hearing, the trial court changed Children's permanency goals from Reunification to Adoption.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

On November 21, 2023, Attorney Chauncey filed an *Anders* brief indicating that, upon review, Mother's appeal is wholly frivolous. Mother failed to respond.

In the *Anders* brief, counsel indicated that Mother wished to raise the following issues for our review:

1. Did the trial court abuse[] its discretion when it changed the permanency goal from Reunification to Adoption without giving appropriate weight to progress that Mother has made toward alleviating the circumstances that resulted in [] Child's placement, including completion of parenting classes, maintaining stable housing, consistency in visits, and mental health treatment.

2. Did the trial court abuse[] its discretion when it changed the permanency goal from Reunification to Adoption without giving appropriate weight to the lack of reasonable efforts made by the Agency to assist Mother with appropriate services and support in parenting [] Children to include, notifying and

- 4 -

allowing Mother to participate in therapy and medical appointments for [] Children; referring and/or providing appropriate trauma therapy to both [] Children and family; increasing the duration and times of visits with [] Children.

3. Did the trial court abuse its discretion when finding that changing the goal from Reunification to Adoption would best serve the needs and welfare of the child without weighing the child's desire to continue her relationship with [] Mother and her siblings who remain in separate foster homes.

4. Did the trial court abuse[] its discretion when finding that changing the goal from Reunification to Adoption would best serve the needs and welfare of [] Child[ren] without giving appropriate weight to the beneficial relationship between the siblings that only occurs during visits with [] Mother.

*Anders* Br. at 2-3 (unpaginated) (some capitalization changed).

## A.

As a preliminary matter, we address appellate counsel's request to withdraw as counsel. "When presented with an *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa. Super. 2010). In order for counsel to withdraw from an appeal pursuant to *Anders*, our Supreme Court has determined that counsel must meet the following requirements:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record,

- 5 -

controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Counsel has complied with the mandated procedure for withdrawing as counsel. Additionally, counsel confirms that she sent Appellant a copy of the ***Anders*** brief and petition to withdraw, as well as a letter explaining to Appellant that she has the right to retain new counsel, proceed *pro se*, and to raise any additional points. ***See Commonwealth v. Millisock***, 873 A.2d 748, 751 (Pa. Super. 2005) (describing notice requirements).

Because counsel has satisfied the above requirements, we will address the substantive issue raised in the ***Anders*** brief. Subsequently, we must "make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Santiago***, 978 A.2d at 355 n.5 (citation omitted)***; see also Commonwealth v. Yorgey***, 188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (noting ***Anders*** requires the reviewing court to "review 'the case' as presented in the entire record with consideration first of issues raised by counsel").

**B.**

We review a trial court's decision to change a child's permanency goal to Adoption for an abuse of discretion. ***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010). In order to conclude that the trial court abused its discretion, this Court "must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record."

- 6 -

*Interest of H.J.*, 206 A.3d 22, 25 (Pa. Super. 2019) (citation omitted). Our standard of review in dependency cases requires this Court "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *R.J.T.*, 9 A.3d at 1190. This Court is "not in a position to make the close calls based on fact-specific determinations." *Id.* Rather, "we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan." *Id.* Notably, even if this Court "would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court." *Id.*

The overarching purpose of the Juvenile Act, which governs goal change requests, is "[t]o preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained." 42 Pa.C.S. § 6301(b)(1). At each dependency review hearing, the trial court must consider, *inter alia*, the continuing necessity for and appropriateness of the child's placement, the extent of compliance with the permanency plan, the extent of progress made toward alleviating the circumstances which necessitated the child's placement, the appropriateness and feasibility of the current placement goal for the child, the likely date the goal might be achieved, and the child's safety. 42 Pa.C.S. § 6351(f). The focus of goal change proceedings, like all dependency proceedings, is on "the

safety, permanency, and well-being of the child and the best interests of the child must take precedence over all other considerations." *H.J.*, 206 A.3d at 25. "The parent's rights are secondary in a goal change proceeding." *In re R.M.G.*, 997 A.2d 339, 347 (Pa. Super. 2010) (citation and internal quotation marks omitted).

The Agency has the burden to show that a goal change would serve the child's best interests. *Id.* If reunification with the child's parent or guardian is not in the child's best interest, the trial court may determine that Adoption is the appropriate permanency goal. *H.J.*, 206 A.3d at 25; 42 Pa.C.S. § 6351(f.1)(2). Notably, "Adoption may not be an appropriate permanency goal if severing an existent parent-child bond would have a detrimental effect on a child." *H.J.*, 206 A.3d at 25. Further, "[b]ecause the focus is on the child's best interests, a goal change to [A]doption might be appropriate, even when a parent substantially complies with a reunification plan." *R.M.G.*, 997 A.2d at 347.

This Court has held that placement in a pre-adoptive home should be completed within 18 months. *H.J.*, 206 A.3d at 25. "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003) (citation omitted). "Thus, even where the parent makes earnest efforts, the court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of

progress and hope for the future." ***R.M.G***., 997 A.2d at 347 (citation and internal quotation marks omitted).

**C.**

The first two issues presented in the ***Anders*** brief aver that the trial court's decision to change Children's permanency goal was against the weight of the evidence. ***Anders*** Br. at 3 (unpaginated). Counsel raises the argument that the trial court failed to consider Mother's progress and the fact that she satisfied all of the court-ordered requirements. ***Id.*** at 7 (unpaginated). Counsel also raises the argument that the trial court did not place appropriate weight on the fact that the Agency did not make reasonable efforts or offer appropriate services to reunify Mother with Children. ***Id.***

In issues three and four in the ***Anders*** brief, counsel avers that changing Children's permanency goal from Reunification to Adoption was not in Children's best interest. ***Anders*** Br. at 4 (unpaginated). Counsel argues that the trial court failed to consider the Children's wishes to reunify with Mother as well as the Children's sibling relationships. ***Id.*** at 7-8 (unpaginated). Upon review, all of the issues raised are belied by the record and, therefore, lack merit.

The Honorable Richard H. Lowe has authored a comprehensive, thorough, and well-reasoned opinion, including a discussion of relevant case law and the Juvenile Act, to explain why the court changed Children's permanency goal from Reunification to Adoption. ***See*** Trial Ct. Op. at 16-30 (concluding that: 1) Children need to remain in placement as Mother has not

demonstrated the ability to safely and appropriately care for Children; 2) Mother has been moderately compliant with the family service plan; 3) although Mother has made moderate progress on her housing, drug use, and mental health issues, Mother remains incapable of caring for Children; 4) after almost five years, it is no longer feasible that Children could ever be safely returned to Mother's care; 5) it is unlikely that Mother would ever learn or demonstrate the parenting skills and temperament necessary to safely and appropriately care for Children; 6) continued placement is required for the Children's safety; 7) Children have been continuously in placement for almost five years, significantly longer than the fifteen out of twenty-two months' standard recognized by the statute; 8) the Agency has made reasonable efforts to reunify Children with Mother for the last five years, offering a myriad of services; 9) Children expressed a desire to continue visiting with Mother but also exhibit elevated behaviors and an increase in psychosomatic symptoms before and after visitation; 10) Children expressed a desire to remain living in their foster homes; 11) the Agency should continue to facilitate sibling visitation; and 12) a permanency goal change from Reunification to Adoption is in Children's best interest). The record supports the trial court's findings, and we discern no abuse of discretion. We, thus, affirm on the basis of the trial court's October 6, 2023 opinion.

**D.**

In summation, following our review of the issues raised in counsel's *Anders* brief, we agree with counsel that the trial court did not abuse its

discretion in changing Children's permanency goal from Reunification to Adoption. In addition, our independent review of the proceedings reveals there are no issues of arguable merit to be raised on appeal. Accordingly, we grant counsel's petition to withdraw and affirm the order changing Children's permanency goal from Reunification to Adoption.

Order affirmed; petition to withdraw as counsel granted. Mother is directed to attach copies of the trial court's October 6, 2023 opinion to any future filings.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/17/2024