J-S46004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.M.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.N.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 629 WDA 2023 |

Appeal from the Order Entered April 20, 2023
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s): 80 of 2022

BEFORE: DUBOW, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:               **FILED: FEBRUARY 29, 2024**

Appellant, K.N.S. ("Mother") appeals from the April 20, 2023 order that involuntarily terminated her parental rights to seven-year-old D.S. ("Child"). Mother's counsel, Shirley A. Makuta, Esq., has filed a petition to withdraw as counsel and an **Anders**[1] Brief, to which Mother has not filed a response. Upon review, we grant counsel's petition to withdraw and affirm the order.

In its April 20, 2023 opinion, the trial court authored a thorough and accurate factual and procedural history, which we adopt for purposes of this appeal. Trial Ct. Op., 4/20/23, at 3-7. Briefly, Mother and S.W.R. ("Father") (collectively, "Parents") are parents to Child, who was born in August of 2016. The Westmoreland County Children's Bureau (the "Agency") first became involved with the family when Child tested positive for opiates, cocaine, and

_____

[1] **Anders v. California**, 386 U.S. 738 (1967).

methadone at birth, and the Agency monitored Mother's treatment in drug and alcohol therapy.

Most recently, in April of 2021, when Child was four years old, local police responded to Parents' house for a domestic violence incident. Parents both admitted to illegal drug use, and the Agency discovered that Child had not received medical care since 2018. The Agency implemented services for drug and alcohol, mental health, and domestic violence treatment. After four months, on August 25, 2021, the Agency obtained emergency custody of Child after finding Mother unresponsive in the home; Father was incarcerated at the time.[2] The Agency also observed various safety hazards in the home, including a bottle of butane, a used syringe, and a cap and bag with white residue which were all within Child's reach. Mother later tested positive for eight illegal substances.

The trial court adjudicated Child dependent on September 14, 2021. The court ordered Mother to participate in a mental health evaluation, a drug and alcohol evaluation, and a parenting assessment and to comply with all treatment recommendations. The court further ordered Mother to attend domestic violence counseling, obtain appropriate housing, and secure and maintain a legal and verifiable source of income. Finally, the court ordered Mother to have therapeutically supervised visitation with Child. The court proceeded to hold several permanency review hearings and, at each hearing,

---

[2] The trial court involuntarily terminated Father's parental rights to Child on April 20, 2023. Father is not a party to this appeal.

found Mother to either be non-compliant or minimally compliant with the court-ordered objectives.

On June 17, 2022, the Commonwealth charged Mother with one count of Hindering Apprehension by Harboring or Concealing an individual, as well as seven counts of drug-related offenses.[3]

On December 5, 2022, the Agency filed a petition to involuntarily terminate Mother's parental rights.[4]

On April 20, 2023, the trial court held a hearing on the petition. Mother did not appear. The court heard evidence from Christopher Haas, Agency caseworker. Mr. Haas testified that Mother has failed to complete a drug and alcohol evaluation or treatment, failed to appear for a parenting evaluation or complete parenting classes, and was unsuccessfully discharged from domestic violence counseling for lack of participation. Mr. Haas explained that the Agency made referrals for each of the court-ordered services, as well as offered Mother transportation to assist her in engaging in the services. He stated that Mother appeared for 10 out of 66 requested drug screens and tested positive for numerous illegal drugs each time she appeared.[5] Mr. Haas

---

[3] The Commonwealth also charged Father with, *inter alia*, numerous drug related offenses, as well as Fleeing to Avoid Apprehension.

[4] The trial court appointed Leslie Uncapher, Esq. to serve as Child's legal counsel.

[5] Mother tested positive for amphetamines, methamphetamines, benzodiazepine, fentanyl, norfentanyl, methadone, codeine, morphine, ozepam, temazepam, cocaine, and marijuana.

explained that Mother last participated in a drug screen on January 31, 2022. Mr. Haas further testified that Mother only attended 2 out of 23 offered visits with Child and has failed to visit Child for over a year, since February 15, 2022. He explained that visits were placed on hold after Mother's repeated failure to appear.

Mr. Haas testified that Child is currently placed in a pre-adoptive foster home, where he has lived for the past four months with his foster mother ("Foster Mother") and foster brother. Mr. Haas explained that prior to living with Foster Mother, both Child and his foster brother were placed with Foster Mother's parents ("Foster Grandparents") and spent weekends at Foster Mother's home. Mr. Haas testified that Child calls Foster Mother "Mommy" and Foster Grandparents "Mimi" and "Pap-Pap" and considers them all to be his family. Mr. Haas further testified that Child is doing well in school, is participating regularly in therapy, and has significantly improved behavior since Mother has stopped visits and communication with Child. Mr. Haas stated that Child has expressed numerous times that he loves his foster family, wishes to stay with his foster family, and that he feels happy and safe in the home. Mr. Haas testified Child has not seen Mother in over a year and that Child's developmental, physical, and emotional needs and welfare are currently being met by the foster family and the extended foster family. Mr. Haas further testified that he believes termination of Mother's rights would be in Child's best interest.

At the conclusion of the hearing, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).  Mother timely appealed.  Both Mother and the trial court complied with Pa.R.A.P. 1925.

On August 14, 2023, Attorney Makuta filed an **Anders** Brief indicating that, upon review, Mother's appeal is wholly frivolous.  Mother failed to respond.

In the **Anders** Brief, counsel indicated that Mother wished to raise the following issues for our review:

   I.    Did the trial court err when it terminated the parental rights of [] Appellant pursuant to the Adoption Act and specifically 23 Pa.C.S. [§] 2511?

   II.   Did the trial court err when it permitted [Child] to be transferred from his original foster care placement to a second placement, although it was within the same extended family?[6]

**Anders** Br. at 7.

### A.

As a preliminary matter, we address appellate counsel's request to withdraw as counsel.  "When presented with an **Anders** Brief, this Court may not review the merits of the underlying issues without first passing on the

---

[6] Mother raises this issue for the first time on appeal.  Accordingly, we find this issue to be waived, and therefore frivolous, and decline to address its merits.  **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal); **see also Commonwealth v. Tukhi**, 149 A.3d 881, 888 (Pa. Super. 2016) ("An issue that is waived is frivolous.").

request to withdraw." ***Commonwealth v. Daniels***, 999 A.2d 590, 593 (Pa. Super. 2010). In order for counsel to withdraw from an appeal pursuant to ***Anders***, our Supreme Court has determined that counsel must meet the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009).

Counsel has complied with the mandated procedure for withdrawing as counsel. Additionally, counsel confirms that she sent Mother a copy of the ***Anders*** Brief and petition to withdraw, as well as a letter explaining to Mother that she has the right to retain new counsel, proceed *pro se*, and to raise any additional points. ***See Commonwealth v. Millisock***, 873 A.2d 748, 751 (Pa. Super. 2005) (describing notice requirements).

Because counsel has satisfied the above requirements, we will address the substantive issue raised in the ***Anders*** Brief. Subsequently, we must "make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous." ***Santiago***, 978 A.2d at 355 n.5 (citation omitted); ***see also Commonwealth v. Yorgey***,

188 A.3d 1190, 1197 (Pa. Super. 2018) (*en banc*) (noting **Anders** requires the reviewing court to "review 'the case' as presented in the entire record with consideration first of issues raised by counsel").

**B.**

In addressing Mother's issues, we are mindful of our well-settled standard of review. When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." **Id.** (citation omitted). "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, governs termination of parental rights, and requires a bifurcated analysis. "Initially, the focus is on the conduct of the parent." **In re Adoption of A.C.**, 162 A.3d 1123, 1128 (Pa. Super. 2017) (citation omitted). "The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)." **Id.** (citation omitted). "[I]f the court determines that the parent's conduct warrants termination of his or her parental rights," the court then engages in "the second part of the analysis pursuant to Section 2511(b):

determination of the needs and welfare of the child under the standard of best interests of the child." ***Id.*** (citation omitted). Notably, we need only agree with the court's decision as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm the termination of parental rights. ***In re K.Z.S.***, 946 A.2d 753, 758 (Pa. Super. 2008). We concentrate our analysis on subsection 2511(a)(8).

**B.**

Section 2511(a)(8) provides for termination of parental rights where the petitioner proves by clear and convincing evidence that "[t]he child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement," and "the conditions which led to the removal or placement of the child continue to exist[.]" 23 Pa.C.S. § 2511(a)(8); ***In re C.L.G.***, 956 A.2d 999, 1005 (Pa. Super. 2008) (*en banc*). In addition, the petitioner must prove that "termination of parental rights would best serve the needs and welfare of the child." 23 Pa.C.S. § 2511(a)(8). Section 2511(a)(8) creates a three-prong test requiring consideration of (1) whether the child has been removed from the parent for twelve months or more, (2) whether the conditions which led to the removal continue to exist, and (3) whether termination would best serve the child's needs and welfare. ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-76 (Pa. Super. 2003). Section 2511(a)(8) requires only that the conditions continue to exist, not an evaluation of a parent's willingness or ability to remedy those conditions. ***In***

*re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006). Further, this Court defines the relevant "conditions" broadly. *See In re C.L.G.*, 956 A.2d at 1006-07 (concluding that a parent failed to remedy the conditions which led to her child's removal when the removal resulted primarily from the parent's positive drug test for cocaine and the parent was later incarcerated for drug offenses). Regarding the third prong, it is important to note that the needs and welfare analysis pursuant to Section 2511(a)(8) is distinct from the needs and welfare analysis pursuant to Section 2511(b), and courts must complete their Section 2511(a)(8) needs and welfare analysis before reaching Section 2511(b). *Id.* at 1009.

Instantly, the trial court found that Child had been removed from the home for over 20 months, that Child was removed from Mother's care due to Mother's drug addiction, failure to maintain a safe and stable residence, and failure to tend to Child's medical needs, and that these conditions have not been remedied because of Mother's refusal to participate in services. Trial Ct. Op. at 8-9. The trial court opined:

> There was ample evidence presented demonstrating that Mother [has] failed to remedy the conditions that led to the Child[]'s removal. [Mother] ha[s] not engaged in any of the services that have been offered. Through their actions, neither Parent has demonstrated that they are likely to remedy the conditions. Mother has not been in communication with the [Agency] or her attorney. She is not actively participating in any services and did not attend the termination hearing. [Mother] has [not] seen the child since February 15, 2022.
>
> While drug abuse was one of the [Agency]'s main concerns, [Mother] participated in far fewer than half of the attempted drug screens. [Mother was] positive for numerous illegal drugs on each

test. Mother has not been tested since January 21, 2022[,] and her current whereabouts are unknown. . . .

The termination of Mother['s] parental rights would best serve the needs and welfare of the child as [Mother has] made no progress towards reunification and the services provided are unlikely to remedy the conditions which led to [] Child's removal.

Trial Ct. Op. at 10. The trial court further emphasized that, at the time of the trial, Mother had only participated in two visits with Child since he was placed in foster care 20 months prior. *Id.* at 11. The record supports the trial court's findings and we decline to reweigh the evidence. Accordingly, the Agency presented clear and convincing evidence to terminate Mother's parental rights pursuant to Section 2511(a)(8).

**D.**

With respect to Section 2511(b), our analysis focuses on the effect that terminating the parental bond will have on the child. This Court reviews whether "termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." ***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010). It is well settled that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005).

"One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond." ***In re Adoption of N.N.H.***, 197 A.3d 777, 783 (Pa Super. 2018)

(citation omitted). "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d at 762–63. "In addition to a bond examination, the court can equally emphasize the **safety** needs of the child under subsection (b), particularly in cases involving physical or sexual abuse, severe child neglect or abandonment, or children with special needs." *Id.* at 763. Moreover, the trial court should consider intangibles, such as the love, comfort, security, and stability the child might have with the adoptive resource. *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). Ultimately, the concern is the needs and welfare of the child. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010).

Here, the trial court emphasized that Child has not had contact with Mother in over a year, placed great weight on the fact that Child was emotionally attached to the foster family, whom he considered to be his own, and concluded that severing the bond with his foster family would cause the Child emotional harm. The trial court opined:

> [C]hild is currently thriving in his current foster home. He views his foster mother as his mother and the rest of her family as his. [C]hild's adverse behaviors have stopped since [Mother's] visits ceased. [C]hild has become rooted in his foster family and removing him from this family would cause further stress, as he has developed stability in his current home.
>
> [C]hild reports feeling safe and secure in his current home. He is well-adjusted to his schedules and is doing well in school. [C]hild has made progress while residing with his foster family [and]

- 11 -

participates in therapy when needed. [C]hild reportedly wants to remain in his current foster family.

[C]hild has developed secure and beneficial relationships with the foster parents and is residing in a safe and predictable home. [C]hild has not seen Mother . . . in over fourteen months. For these reasons, this [c]ourt is convinced that termination of Mother['s] parental rights would best serve the needs and welfare of [C]hild.

Trial Ct. Op. at 12. The trial court also credited the testimony of Mr. Haas, who expressed that termination of Mother's parental rights would be in Child's best interest. The record supports the trial court's findings, and we discern no abuse of discretion. Once again, we decline to usurp the trial court's credibility determinations or reweigh the evidence.

**E.**

Following our review of the issues raised in counsel's **Anders** Brief, we agree with counsel that the trial court did not abuse its discretion in terminating Mother's parental rights pursuant to Section 2511(a) and (b). In addition, our independent review of the proceedings reveals there are no issues of arguable merit to be raised on appeal. Accordingly, we grant counsel's petition to withdraw and affirm the decree terminating Mother's parental rights.

Order affirmed; petition to withdraw as counsel granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 2/29/2024